Good morning. May it please the court. Shalani Malin on behalf of petitioners Eduardo Felipe Funez Alvarado and his minor son Angel Eduardo Funez Leon. I'd like to reserve two minutes for rebuttal. Very well. The legal errors made by the agency in evaluating my client's eligibility for immigration relief are straightforward and the facts here are undisputed. When Mr. Funez went to the police to report the beatings and death threats he faced for members of MS-13, the police told him the best thing for him to do would be to leave the country and disappear because MS-13 had a way of quickly finding this out. This key piece of testimony which the IJ found credible directly undermines the conclusion that the IJ reached and yet the agency failed to consider this testimony whatsoever. The agency likewise failed to consider corroborating country conditions evidence that shows the Honduran government is powerless to protect its residents from MS-13. Case after case in the Ninth Circuit holds that the failure to consider highly probative evidence like this is legal error that at a minimum requires remand on Mr. Funez's asylum withholding and CAT claims. Counsel, was that argument raised to the BIA? The argument that they ignored that evidence, that the IJ ignored that evidence? Yes, your honor, it was raised to the BIA. In his administrative appeal, Mr. Funez mentions this exact exchange with the police officers, that's at AR-26, and he also challenged the IJ's determination on the unable unwilling prong, which is the what we're discussing here as well. But you're making the argument that he failed to consider the evidence, the IJ failed to consider the evidence, right? But was that raised to the BIA, that specific argument? I would like to note that the exhaustion standard in the Ninth Circuit is not that formalistic. They don't need to raise the precise issue, and here Mr. Funez did raise this exact exchange with the police officer, and he did challenge the unable unwilling prong. But you're suggesting it was almost like a legal error, correct, by ignoring the evidence, right? Don't you claim it as a legal error? Correct. But the way I see the brief to the BIA, it was almost a substantial evidence error, evidentiary error, not a legal error. I think it was both, Your Honor. Okay, can you show us where you think it was that was raised as a legal matter? Yes, the exact exchange is raised on AR-26, and it says the police advised him to leave the country telling him that it would probably be better to leave the country because he had made the report. And then if you turn to the section about, I think it's section three, independent grounds to affirm the IJ's decision, he raises the government and governmental involvement. That's at AR-40. And Mr. the argument that he raised is the IJ seems to have adopted a per se rule that because he filed a police report, that that means the government was able and willing. But Ninth Circuit law tells us that that's not true. You have to go beyond that. Antonio V. Garland says that even if an individual is able to file a police report, that does not end the inquiry. And J.R. V. Barr tells us that some official responsiveness is not enough, that the agency must examine the response to the police report. And here, both parties agree that the police's response was to leave the country, to disappear, and MS-13 has a way of quickly finding this out. But didn't he leave the country like two days afterwards? So how does he know what happened? He did leave the country two days after. I think it's important to note that he was just heeding the police's warning. There is no requirement for a petitioner to stick around and see if these death threats come true. He was caring for his minor son at the time. J.R. V. Barr holds that this court's law does not require applicants to wait until gang members carry out their deadly threats before they are eligible for asylum. And I would also like to point out, in Antonio v. Garland, the petitioner left the country five days after making his report, and the court still remanded for the agency to consider all of the evidence on the government-unable, unwilling prong. And that's exactly what we're asking for here as well. Do you think there was evidence that the IJA actually did consider the evidence? Because he said, you know, when he said that statement about police telling him to leave, he said, I understand that, but is there anything else? So the IJA did consider that evidence? No, Your Honor, we don't think the IJA did consider that evidence. The IJA did ask a question about it at the hearing, and Mr. Funes was pro se, so the IJA was kind of just doing his job asking questions about his claim. Um, him asking a question about it at the hearing does not show that he considered it in evaluating Mr. Funes's eligibility for relief. Didn't the IJA explicitly acknowledge that the police had advised the petitioner to leave the country? And is that not enough? Yes, Your Honor, we do not think that's enough. There was a passing mention of this testimony in the background section of the IJA's decision, but he did not mention the testimony at all in actually evaluating the claim for relief. And the BIA does not mention this testimony at all either. In Diaz v. Bondi, the court held that when the IJA makes one passing reference to relevant evidence and the BIA doesn't mention it at all, that is legal error and it requires remand. And that's exactly the situation that we have here. And although Mr. Funes was able to file a police report, as I mentioned earlier, that does not end the inquiry. This type of official responsiveness does not automatically equate to government ability and willingness. In Afri v. Holder, the Ninth Circuit held that the police's response provides highly relevant evidence on the unable unwilling prong, and further held that the BIA committed error in focusing exclusively on the fact that the petitioner was able to make a report. I'm wondering if you could talk a little bit about the country report issues. Absolutely. And I'm particularly curious in hearing more about your argument that the immigration judge erred in deciding what to focus on in the country report. Yes. As you note, we argue that the agency failed to consider the country conditions report. The IJ doesn't mention the report at all in evaluating Mr. Funes's eligibility for asylum. There's a brief mention in evaluating his eligibility for cat protection, but even if you look at that portion of his decision, he cites the report saying C generally. He doesn't mention any of the evidence that's in the report, including evidence that directly undermines the conclusion that he reached. And specifically in this country conditions report, there's evidence that MS-13, which is the gang that was persecuting Mr. Funes Alvarado, committed killings and intimidation of police, which is the exact issue that we're talking about, where he went to the police and police told him, MS-13 is going to find out about this report. You better leave the country, disappear. And again, the IJ fails to consider any of this evidence from within the report. And that kind of selective reading of the record just is legal air and requires remand. Turning to Mr. Funes's cat claim, the IJ again failed to consider the statement to the police, which is, or the statement that the police made to him, which is leave the country, disappear, MS-13 has a way of quickly finding this out, and failed to consider the country conditions evidence. And for those reasons, the cat claim also needs to be remanded. And if there are no further questions, I'd like to reserve the remaining of my time for rebuttal. You got it. We'll round to five, Bonnie. We'll go five minutes. Thank you. Good morning, your honors. May it please the court, Nancy Pham, on behalf of the attorney general. Your honors, the court should deny this petition for review because the record does not compel the conclusion that the Honduran government was or would be unable or unwilling to control the private sector. The record does not compel the conclusion that the Honduran government was or would be unable or unwilling to control the private actors that petitioners fear. To start, I would just like to note that the precise testimony of petitioner during the hearing before the immigration judge at AR 194 to 195, is the guy that was filling out the paperwork told him the best thing for you would to just be to leave the country. And the other part of that is that the statement that the petitioner disappear because they have a way of quickly finding these things out. So what petitioner said in his own words was they, there's no mention of MS-13 specifically in the statement. So just to clarify that point. And framing, your honors, framing your review is the substantial evidence standard. His testimony, the facts in his testimony, those are all factual findings that the agency made. And the standard of review, substantial evidence, means that the only question before you is whether any reasonable adjudicator could have found as the agency did. So in other words, whether the agency's finding qualifies as a potentially many reasonable possibilities. And put just another way, your honors, every other reasonable fact finder had to decide the opposite way as the agency. And so that's the standard. It's highly deferential. I know your honors are familiar with it. Well, it does seem like a pretty bad fact that the police told him that he should leave, right? How, I mean, why is that some evidence that they are unwilling to protect him? That is not the greatest fact, but it is the police acknowledging, they're not ignoring that there are issues, you know, in the country. But from petitioner's own testimony, what he said was that the police took the report and that they were willing to investigate. You know, in cross-examination from the DHS attorney, they asked again, you know, essentially, why would you make the report if you didn't think that they would be helpful? And he testified that he went to him because he thought that they could help and that they communicated to him a willingness to help. Right, he thought that they could help, but then they said you should just leave. It's better for you to disappear. That's not really much help, is it? It's, it's acknowledging that there are issues, so the government would argue that that is more realistic than just, you know, ignoring, ignoring the problems that exist. But again, the police communicated, they took the report and they communicated that they would investigate it. And petitioner concedes that they were willing to help him. And does one, a remark by one police employee, does, is that remark imputed to the entire country's law enforcement system? Yes, your honor. Do you understand how, how would the IJ approach that? Right, and that's, that's a factual finding and that's a determination that the agency is best fit to make. And that determination, you know, is reviewed under the substantial evidence standard. So, so then, so, so I'm, my apologies for, for interrupting you, but could the immigration judge have, have made that finding implicit in the order below? Does he have to set forth every single credibility finding or, or, or under the substantial evidence standard, can we just deny the petition on this, on this issue, given what's in the record? The government's position is that under the substantial evidence standard, this evidence in the record does not compel the opposite conclusion. So facts such as, you know, whether one employee at the police department or police office's response means that the entire government is unable and unwilling, that's a determination that the agency makes. And government, the government would argue that under the substantial evidence standard, that is, the evidence doesn't compel the opposite conclusion. But, but counsel, isn't there a responsibility of the IJ to consider all the material evidence, significant material evidence? Yes, your honor. And wouldn't you agree that that statement, the police, for him to leave is a significant material piece of evidence? Yes, your honor, it is a material piece of evidence and the immigration judge explicitly mentions it in the record at AR-91. I believe your honor referenced it earlier that the police advised him to leave the country. But he didn't, he didn't include that in the analysis of whether, you know, the unwilling prong. That's, that's the problem I have with it. Yes, your honor, the court, the immigration judge explicitly mentioned it in the factual background at AR-91. There's no requirement under this circuit's precedent that the judge, you know, repeat it in all the pieces of his later analysis under the different prongs. The fact that the immigration judge explicitly mentioned it tells your honors that the immigration judge considered it. Specifically, Lopez v. Ashcroft, the agency is not required to write an exegesis on every contention. But what the immigration judge has, has told you and told us is that they can, he considered that piece of information because it's specifically written in his opinion. The problem though, his analysis is somewhat misleading, right? He says, to the contrary, the lead respondent testified the local police took his report and told him the matter would be investigated. Lead respondent then left Honduras and has not inquired about the status of the investigation. Seems like a material omission is to, to not mention that the police told him to leave. Your honor, the government's position is that the immigration did consider it as the immigration judge explicitly mentioned it at AR-91. And just making the point that, the exhaustion point, the government doesn't weigh that point, your honors. Essentially, in the brief before the board, there's no mention that petitioner, that the agency, excuse me, that the agency did not consider the statements that the police told the petitioner to leave the country. While exhaustion isn't applied formulaically or formalistically under this circuit, Gonzales Castillo v. Garland states that an applicant for immigration relief need not use precise language or terminology or provide a well-developed argument to support his claim, but he must put the issue before the board such that it had the opportunity to correct the And specifically in that case, it was a pro se petitioner. And the court further went on to reason that the court construes filing submitted by a pro se applicant liberally. But even in this context, general contentions are only sufficient where they put the board on notice of the contested issues. And the brief before the board focuses on due process, rights to attorney, the immigration questioning of petitioner and whether that was sufficient. They made very specific arguments to raise legal issues before the board, but they did not specifically discuss the issue of this testimony and whether the agency considered it. So the government's position is that it is not exhausted, and therefore the court should not consider the issue. Another case on this point is Albedarne v. Bondi. And in that case, the petitioner actually raised the general issue of translation before the board, but specifically didn't raise the issue with interpreter who had assisted in his removal hearing. And there, the court held that he had to specifically raise that issue. And that due processes challenge was dismissed because there was a lack of jurisdiction. So the government's position is that that point is not exhausted. So the government would argue that under the unable or unwilling to control prong, the evidence we have in the record is that petitioner made only one report. And that one report the police took, and the police indicated that they would investigate it. And they indicated that they would help him. And those are his own words. That's the evidence we have in the record. The country conditions reports, well, and the agency recognized that it reflected widespread criminal violence. There were also indications of the government curtailing or correcting that violence. And just to frame the country conditions report, it's one report, 28 pages. It's specific. It speaks in generalities. And MS-13 is only mentioned once. And that mention is gangs like MS-13. So it is not specific. It's not specific to petitioner's village or town that he lived in. And the court's precedence on this point, Go V. Holder, explains that the board may give specific evidence greater weight than general information contained in a country report. So it was well within the board's discretion and the agency's discretion to give the specific weight petitioner's testimony that the police took the report and indicated a willingness to investigate, to give that more weight than a country conditions report that had general information and just one of MS-13. And as to the cat issue, the government argues that the substantial evidence supports the agency's conclusion that petitioner failed to establish a likelihood of future torture by or with the acquiescence of the Honduran government. And the case law under this circuit is very clear that imperfect police work is not sufficient to meet this standard. In Macias Padilla v. Sessions, the petition was denied because one unsatisfactory experience with the police is not compelling evidence that the government would more likely than not acquiesce in future torture. And that is the situation we have here, one unsatisfactory remark from the police. But on the other hand, the police indicating that they took the report and that they were willing to investigate it. In addition, Pimentel Estrada v. Garland, that petition was denied because the record contained country conditions evidence that some police officials in Mexico are corrupt and work with cartels. But that did not compel the conclusion that it is more likely than not that he will be tortured. And that's what we have here, just general information of corruption. And that's not sufficient to compel the opposite conclusion. And the government would just like to address some of the cases that petitioner mentioned. For instance, J.R., Diaz v. Bondi, and Antonio v. Garland. I will take them each in turn. But the overarching point here is that the analysis of the court is extremely factual. And that tells us that the standard for review is substantial evidence there. So in J.R., and this is at Respondent's Brief, pages 27 to 30. But in J.R., one must look at all the factual underpinnings in the case. In that case, gang members cut off two of J.R.'s fingers. The gang members shot him seven times, causing the loss of one lung. They murdered his son at home. And then after reporting that murder and agreeing to cooperate with prosecutors, he received death threats. And the government withdrew protection after he testified. That's a very factual analysis. And that's what's underpinning that unable and unwilling finding in that case. In Diaz v. Bondi, the cartels murdered petitioner's brother and his grandmother. The family then received death threats after, for several years. And then after petitioner returned to Mexico, her partner was abducted, beaten, and tortured. And specifically there, there was a home invasion in 2016. And what was driving the legal error in that case was that the board and the agency didn't find that the home invasion was tied to the prior violence and threats of the cartel. And so in that case, because they completely ignored that evidence, that was what was driving the legal error. All right. Thank you, counsel. Time's up. Appreciate it. Thank you. I just want to address a few points that counsel for the government made. First, the government focuses on the substantial evidence standard, but this ignores the legal error that we're discussing. And even if this court does not hold that substantial evidence compels the conclusion on the government unable and unwilling prong, which we think it does, there's still the legal error that the government does not address at all, not in their briefs, not in argument. And the legal error is the failure to mention all of the relevant evidence. And here, the government argues that the police took the report and said that they would investigate. But as your honors noted, the police in the very same breath said, leave the country, disappear. MS-13 is going to find out about the report. And so I think this, and the government agrees that this is a significant statement. This is key testimony in this case. And the IJ just does not consider it. There's that one passing mention, which Diaz v. Bondi tells us that's not enough. Diaz v. Bondi also holds that it's legal error when the agency failed to give reasoned consideration to the evidence, which is exactly what we have here. They make that passing statement. But as your honors noted, when they actually are evaluating the claim, they say, we, we, he was able to make a report, the police said he would investigate. We hold that he can't meet the government-unable, unwilling prong. I do think you have a strong argument there. But if you brought that to the IJ, it would have been a notice, so that that's the legal error you're, you're claiming. Because the argument I think is, in the brief, is only under Aguiman, right? That he failed to elicit enough information, right? That's not the same thing as saying the IJ did not consider significant material information. MS-13 Yes. And to that point, and the government's point, this, we think that this issue was raised. The exact testimony was in front of the BIA. And it was the BIA's legal— MR. BARROWS The problem is it was a different legal error that was raised, right? Wasn't it the error raised for the BIA that the IJ failed to elicit enough information? MS-13 In evaluating this prong, the BIA made the same mistake as the IJ and held that because the petitioner, Mr. Funes, was able to make a police report, that he was not able to meet the government-unable, unwilling prong. But that's not the law in the Ninth Circuit. We have to look beyond that to the police's response to the report. And— MR. BARROWS No, but I agree with that. But how was the BIA on notice that that's the error you were complaining about? MS-13 I think, as I said, the testimony, it was in front of them. And they relied on the police report being pending as evidence that the government was able and willing to protect Mr. Funes. But that's not enough, especially given the fact that the BIA did reach this prong. They did not reach many of the other portions of his asylum claim. They upheld it on the government-unable, unwilling prong. And I think I raised this earlier, but a petitioner is not required to raise an issue in precise form during the administrative proceeding. And general contentions are enough. Here, when he raised the unable, unwilling prong to the BIA, that was enough to put them on notice that there was a legal error in making this determination. Counsel for the government also talks about some of the cases and the harm that the petitioners face there. I just want to note that the harm that the petitioners face has no bearing on the government-unable, unwilling prong. And those cases are relevant for the proposition that the police taking a report is not enough and that official responsiveness is not enough. We have to look beyond that to the police's response. This was also not one bad experience with the police where they couldn't find the assailants. The police told him, leave the country, disappear. MS-13 is going to find out about the report, if there are no further questions. So first, I want to thank counsel, the work firm. Is it Keeley? Did I get that right? Thank you for stepping in. And counsel, do you have special guests in the courtroom today? I do not. No, just you. Okay. Okay, got it. I thought there may have been some family members in the courtroom today. Anyway, although you are, there we go. I can't see over the banner. Well, thank you again for everything you do in this case. I want to thank government counsel for making the trip in light of everything that's going on. We'll take this matter of submission and this particular panel is done for the day. I want to thank Judge Liberti, even though it was a short time today, thank you for taking time out of your busy schedule. You've got a trial coming up. I do, next week. So thank you for taking the time. Thank you, Your Honor. Some of us will see you tomorrow. All rise.
judges: OWENS, BUMATAY, Liburdi